Good morning, Your Honors. May it please the Court, I am Francis Cowick and I represent the appellant, North China Cargo Services, Inc. This appeal deals with a claim for damages arising out of a shipment of goods from Long Beach, California to Qingdao, China. North China contracted with the appellee, Sinotrans Cargo, Sinotrans Container Lines, to ship 60 containers from Long Beach to China. The containers reached China in perfect order, but it was after they reached China that the problems occurred. The consignee, Kingswell, for whatever reason, failed to pick up the containers from the Chinese customs, and as a result, Sinotrans alleges that they were charged fees, charges, and demerge for approximately two years based upon customs holding the containers when Kingswell did not pick them up. Now, we have two contracts in this case. One is a gentleman's agreement, which is really not an issue in this matter, as everything pursuant to the gentleman's agreement was paid for. The second agreement is a bill of lading, which was not received until after the containers had arrived in Qingdao, China. Now, the bill of lading picks a forum and its jurisdiction for lawful lawsuits and chooses Chinese law and a maritime court of the People's Republic of China. At the time of the filing of this case, we filed a motion... Let me ask you about that forum selection clause. Does it apply to this case? It applies to this case insofar as this was a forum that was chosen by Sinotrans. They chose a forum, they chose a law. Any lawsuit against Sinotrans would have to have been filed in the People's Republic of China. But this isn't a case against Sinotrans? That's correct. So the forum selection clause on its face doesn't appear to speak to this situation. Well, however, the district court judge chose that, decided that Chinese law didn't apply. So? The Chinese law applying is separate from the forum selection clause. That's a choice of law clause as opposed to a forum selection clause. That's true. That's true. However, if you go to the next step, where the motion for dismissal is also based on forum nonconvenience, everything happened in China. The cargo was sitting in China, all the records are in China, witnesses are in China. Your clients where? My clients are in the United States. I'm not sure I've ever heard of a forum nonclaim made by a domestic corporation that wanted to be sued in a foreign country. My client has connections in China. Going to China to resolve this matter would not be a problem for me. That may mean that you would have lost a claim in China under a forum nonconvenience argument. But I can't say that I can remember any other case in which a domestic corporation has protested that it was sued in the United States. But we would not be able to produce any evidence if all the evidence was sitting in China. See, this is the problem with this matter. Whatever occurred, occurred in China. All the documentations are in Chinese. All the witnesses are in China. Everything that occurred is in China. The customs was allegedly holding the cases for two years. First of all, most of the facts are undisputed in terms of what happened in China. And in responding to the motion for summary judgment, you didn't ask for permission, for example, to even complain about lack of witnesses and the fact that you needed more testimony. Oh, but we did. In our opposition, if you look at the... I know, but you didn't make... ...for more time to obtain discovery. No, but in our... You didn't submit affidavits attesting to the need for discovery, nor did you file any motion for leave to conduct additional evidence gathering. You just didn't comply with 56-F. No, but we did say that there were disparities of material facts, though. And that should have been enough, I believe, to... Just saying it surely isn't enough. What did you offer by way of evidence to demonstrate that there actually was a genuine issue? The fact that we did not know what was going on in China. What kind of issue does that make? I don't know. And you've got evidence on one side and you have... I don't know on the other. Now, what makes that a genuine issue of material fact? The fact that we were unable to supply with anything. We just had no way of knowing. And it sounds like you're bound to lose, because there's nothing to oppose what's been offered up by the move-on. There is a procedure under Rule 56-F to explain with additional discovery we might be able to respond. I don't know is not much of a response to a motion for summary judgment. That's true. But not to conduct the additional discovery. We were only given three months in which to... at discovery contest. May have had good grounds for a Rule 56-F motion. Not only is this within your control, but in response to the question I previously asked you about your forum non-motion, you told us that you were actually quite comfortable litigating this thing in China, because you have a presence there. You have a presence there. What was the problem in gathering some evidence? Because we did not have subpoena rights to produce witnesses. We did not have any process in the United States, jurisdiction over any of the documentation or the witnesses in China, in order to bring them here to get the affidavits. There was no way for us to depose hostile witnesses since the federal court jurisdiction would not apply to China. I'm going to give you an open-ended question. I'd like you to assume that you could have gotten some assistance from the court in obtaining witnesses. What kind of a defense would you have offered here? Your folks failed to pick this up. It's a pretty clear contract. The Sinotrans has got all of these containers sitting on the dock that they cannot free up to ship back to the United States or someplace else. What evidence would you have liked to have obtained? Why they were unable to obtain the containers. Under customs law, the Chinese customs had seven weeks in which to make a decision as to what they were going to do. At which point in time, Chinese customs had a number of options. They could have sold the merchandise, taken the fees from the sale, and put it against a demerge and put it against a charge. But there is some evidence that Sinotrans did take some steps to free up their containers. Two years later. And the big question then is... All of this, of course, is a mitigation defense to a claim that you're otherwise just flat going to lose. It may be a mitigation defense, but we're talking about seven weeks as opposed to two years. If the Chinese customs rules and regulations specify that there was a seven-week period of time... Did you cite any Chinese rules or statutes to support this claim that it could all have been done in a very short period of time? I do not remember, Your Honor, to be honest with you. Well, that would be important, wouldn't it? It probably would be, but to be honest with you, I cannot tell you yes or no. The second problem with this case is the fact that the federal court... I'm sorry? I didn't say anything. Oh. The second problem with this case is the fact that the court had no jurisdiction in federal origin or diversity. At the beginning... Why is there not diversity jurisdiction? The Sinotrans has offices in the United States. They are maybe a Chinese corporation, but they do business in the United States. The only defendant who would... Wait a minute. What would that go to? That would have gone to the original jurisdiction at the federal court. Well, but a corporation has two sites of potential sites of jurisdiction under Rule 1332. One is the place of incorporation or any place of incorporation. The other is where it has its principal place of business. We have very, very recent Supreme Court law on that. We have laws just a couple of months old on that question. And what would that have told us about Sinotrans? The Sinotrans, you could have brought it to the national state court. Probably should have brought it to the national state court. Well, it has nothing to do with diversity jurisdiction. It doesn't have anything to do with diversity jurisdiction. The question is, where is the citizenship of Sinotrans? The citizenship of Sinotrans is probably in China. Why isn't there diversity jurisdiction? Because they have officers here and they... Wait a minute. You just told me that the citizenship was in China. Yes. Are you telling me their principal place of business is in California? Their principal place of business is wherever the shipping lanes are. No. Do you know what principal place of business means as a legal proposition? Yes, I do, Your Honor. What does it mean? Wherever it operates? Wherever the... Where is McDonald's principal place of business? It's wherever the main offices are. Okay. Where is Sinotrans' main office? I don't know. You don't know. So, what's the basis for objecting to diversity jurisdiction? Because, again, there is no federal question in this case. So what? You are wasting our time. Do you know what it takes to get diversity jurisdiction? Yes. What is lacking here for diversity jurisdiction? In my belief, it's the fact that even though Sinotrans is a Chinese corporation... Is the amount in controversy in excess of $75,000? Yes, it is. What's missing? Your Honor, the fact that they are doing business here and they haven't conceded the business. Okay. That's just... But are you telling us that Sinotrans' principal place of business is in California? Whether or not it's their principal place of business, I cannot tell you that. Okay, but if you can't tell us that, then you can't controvert it. Did Sinotrans plead anything here? Did they verb where their principal place of business was? Not that I'm aware of. Okay, you haven't put this into controversy. You haven't provided anything. So how can you controvert the question of subject matter jurisdiction? Because it is my belief... Who filed the complaint here? Sinotrans. Okay. What did Sinotrans say about their principal place of business? He said that he was a Chinese corporation. Okay. So what's the problem? It is now your burden to prove that they're not a Chinese corporation. And you may do that by either showing that they're incorporated someplace else other than China, because they're incorporated in California, then they are also a citizen of China, or you may do it by showing that their principal place of business is in California. Did you attempt to do that? No, we did not. Okay, then you're done. That one's over. There's jurisdiction. There's still the issue of the form of non-convenience. In fact, all the documentation and the ability to defend this case sits in China. With the witnesses being in China, with the subpoenas, and the district court having subpoena power in China, and the ability of Sinotrans to basically present anything from their client in China as a declaration, but not being able to refute it, puts North China Cargo in a position to where it is impossible for them to defend. Now, we don't know why the cargo, why it took two years for the containers in customs to be released. We don't know what the dispute was between Kingswell and Kingswell being the consignee. Kingswell was your agent. I'm sorry, Your Honor? Kingswell was your agent. Kingswell was our consignee. Right. And we were unable to get any answer as to why he did not pick up the material. We also don't know why it took Sinotrans, or my cousins held on to the cargo for two years. Well, you were permitted to conduct discovery in the United States to find out from them why they didn't. And all we were told was that they refused to release it. As to the reason why they refused to release it, what it had to do with They being the Chinese? Them being the Chinese. Why the Chinese refused to release it, was it a dispute between Sinotrans and the Chinese customs that had nothing to do with us? There was no way for us to know. We do not know. Why did it take two years to release the cargoes? We don't know. Eventually, Sinotrans did pay some of the money to release 40 of the 60 containers. Well, what happened to the other 20 containers? Why weren't they released also? Why did it take Sinotrans two years to pay the fees in order to have the Well, this could have been done through discovery in the United States. We attempted that and were unable to get any decent replies. We were also under a very strict time limit as far as our discovery coverage was. If you were appealing from a denial of a rule, what is it, 56 motion, because you didn't have adequate discovery, that would be another story. But you never made such a request. But all the research on the bottom line is that with everything in China, Sinotrans to say that they were at a disadvantage would be an understatement. There was no way for them to obtain the information in the United States from what was happening in China. And I would like to reserve whatever time is left before we vote. You may. Thank you. We'll now hear from counsel for Sinotrans. Good morning, Your Honors. Alan Nakazawa on behalf of Sinotrans Container Lines, the appellee. I'm not sure where I should start, but I would like to respond to some of the comments made by Mr. Cowick. First of all, counsel talks about this case really involving witnesses and documents in China. They admitted during the course of litigation that the cargo was not accepted for delivery by King Well. They also admitted during the course of litigation that they're obligated to accept the delivery. The depositions that we took, or the deposition of the president of North China that we took, confirmed that the reason the cargo was not picked up was that their purchaser, the constantly King Well, backed out of the purchase. I kept assuring them that they would pick it up, they would clear, they would pay the duties. And in the end, they decided to back out of the deal. Originally in the case, North China argued that Sinotrans was responsible for the delay in picking up because we delayed in issuing the bills of lading in California and that they did not delay in paying the freight in California. So initial disputes really involved facts that occurred in California, not in China. The main issue, Your Honor, that they raised in opposition to the summary judgment and on this appeal is the failure to mitigate, an issue that they had the burden of proof. We submitted, Sinotrans submitted, specific evidence as to what we did to try to get the cargo back. We contacted North China. We contacted King Well. We tried to convince them to pick up the cargo. We applied to Customs to have them auction the cargo and return our containers. That was turned down. We hired a Customs clearing house company to assist us, experts in that area. They were unable to do that. We then applied to the King Dow Maritime Court for a court order to order Customs to sell the cargo and give us our containers back. That was not successful. We had specific evidence of the steps that we took to mitigate damages. North China, on the other hand, submitted no declarations, no specific evidence to controvert our evidence or to show that there was a genuine issue of material fact as to mitigation of damages. In February 2008, Judge Wilson had a status conference. We advised counsel, as well as the judge, that we thought this was a summary judgment case. The judge gave counsel, both parties, 90 days to conduct discovery. It was no surprise that we were going to file a summary judgment motion. No surprise is the issues. The case had been in the district court for two years at that point. North China propounded some written discovery on Sinotrans. No depositions, no 30B6 depositions, no other depositions of our witnesses on mitigation,  we took the depositions of the president, they took no depositions. As this court has pointed out and as the district court pointed out, they did not submit any affidavit under Rule 56F to justify further discovery, and the court correctly did not abuse its discretion by refusing to allow further discovery. The court also entered a finding that we did not, Sinotrans did not impede the discovery of North China as counsel has stated. Subject matter jurisdiction, I don't think there's much to say there. We did allege in the complaint our principal place of business was Shanghai and that we were a Chinese corporation. In addition, Your Honor, this case involves service contracts and ocean bills of lading. They are maritime contracts involving the transportation goods by sea. The primary objective is commerce under Kirby. These are maritime contracts and therefore subject to the advocacy jurisdiction of the court. Is there any question that we've got diversity of jurisdiction as well? I don't believe so, Your Honor. I don't believe so. We have a foreign corporation, two U.S. companies, and then we have a mountain controversy satisfied. Unless the court has any additional questions, I would like to submit on our brief. No questions? Thank you. Thank you. We'll hear a rebuttal from Mr. Pollack. Thank you, Your Honor. There's an issue as to whether or not Sinotrans actually mitigated the damages. He said he applied. However, again, the reason as to why the containers were not released is a question that we don't have the answer to. The district court also misapplied the Chinese law. They took this as a contract law but did not make any reference to either the customs rules and regulations or the customs law with regards to containers. Did you call those things to the attention of the district court? At the time of the hearing, it was. At the time that you were opposing the motion for summary judgment? No. How is this? I don't understand. If you want a court to take notice of foreign law, you have to ask it to do so. Because the motion for summary judgment, Your Honor, at the time was whether or not there was sufficient controversy or facts to grant the motion for summary judgment. It was a contract case. The only question was what law was to be applied, which was determined by the judge. We did not find out exactly what law the judge applied until after he made his ruling and basically made his decision. So there was no opportunity in which to say, well, these are the laws that you should apply to. It was just basically contract Chinese law, period. That's the way he asked it anyway. I don't understand. This was a litigated motion. It's clear that if you want a judge to take notice of foreign law, you ask him to do so. It's a procedure for discussing foreign law. Well, at the time that the motion was heard, the judge's chief concern was whether or not COGS would apply, the U.S. Goods Overseas Carriers Act of 1936, whether or not that applied. And that was all he was interested in hearing. If COGS would apply, then he would assume that there was federal jurisdiction. If COGS did not apply, then the question was what the judge was going to do. The judge did not hear and did not want to hear, basically, anything other than whether or not COGS was applicable to this case. I don't understand. The judge didn't want to hear. You prepare a brief. The judge doesn't edit your brief. He may not want to consider some of your arguments, but the question is what did you argue? We argued what he wanted to hear, which was COGS. That was his main concern. He told us that was his main concern. And he wanted to know whether COGS would apply. If it did apply, why did it apply? If it didn't apply, why it didn't apply. And that was all he wanted. Did you move for re-argument? No, we did not. Anything else? Thank you, both counsel, for the argument. The case just argued is submitted. We'll now move to the last case in this morning's argument calendar, Kavig v. Wolfe.
judges: Korman, Clifton, Bybee